Doc# 2011010893
Bk 16064 Pg 280 - 292
Received York SS
03/15/2011 1:00PM
Debra L. Anderson
Resister of Deeds

ℓ
BP⁊

Recording Requested By & Return To:
Chicago Title ServiceLink Division
4000 Industrial Blvd
Aliquippa, PA 15001

Prepared By:
ServiceLink
PO BOX 4469
Rancho Cucamonga, CA 91729

Investor Loan #

[Space Above This Line For Recoding Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT
(Step Two of Two-Step Documentation Process)

Borrower ("I"): [1]

Original Borrower Vesting: TINA L. GEISINGER AND SAMUEL GEISINGER
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION
Date of Mortgage: 08/18/2006
Original Loan Amount: $184,000.00
Recorded: 08/22/2006 DOC # 2006046827 BK 14932 PG 0771
Recorded in the Official Records of YORK COUNTY, ME

Lender or Servicer ("Lender"):

DLJ MORTGAGE CAPITAL, INC.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

| | |
|---|---|
| MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac <u>MODIFIED</u> INSTRUMENT<br>VMP ® | Form 3157 3/09 (rev. 8/09)<br>D14200 (0909)<br>Page 1 of 10 |


EXHIBIT E

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): August 18, 2006

Recorded in the Official Records of York County, ME

Loan Number: (

MIN:

Property Address *[and Legal Description if recordation is necessary]* ("Property"):
203 Saco Ave
Old Orchard Beach, ME 04064
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I live in the Property as my principal residence, and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with
MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 2 of 10

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on February 1, 2011 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on February 1, 2011.

   A. The new Maturity Date will be:   January 1, 2051   .

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $232,725.69 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of 2.0250% will begin to accrue on the New Principal Balance as of January 1, 2011 and the first new monthly payment on the New Principal Balance will be due on February 1, 2011. My payment schedule for the modified Loan is as follows:

PAYMENT SCHEDULE APPEARS ON PAGE 4.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with
MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 3 of 10

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.0250% | 01/01/2011 | $707.82 | $409.83, may adjust periodically | $1,117.65, may adjust periodically | 02/01/2011 | 60 |
| 6 | 3.0250% | 01/01/2016 | $822.12 | May adjust periodically | May adjust periodically | 02/01/2016 | 12 |
| 7 | 4.0250% | 01/01/2017 | $942.74 | May adjust periodically | May adjust periodically | 02/01/2017 | 12 |
| 8-40 | 4.8750% | 01/01/2018 | $1,049.33 | May adjust periodically | May adjust periodically | 02/01/2018 | 396 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SECTION 3.C. CONTINUES ON PAGE 5.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009
Form 3157 3/09 (rev. 8/09)
D14200 (0909)
Page 4 of 10

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. **Funds for Escrow Items.** The original Loan Documents do not include the standard Fannie Mae and Freddie Mac escrow account provisions and must be modified to incorporate these escrow account provisions. The required escrow account provisions are contained in the attached Funds for Escrow Items Provisions Exhibit and are expressly incorporated by reference into this Agreement.

   E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 5 of 10

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)
D14200 (0909)
Page 6 of 10

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGES FOLLOW.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with
MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)
D14200 (0909)
Page 7 of 10

_Tina L Geisinger_ (signature) 1-3-11 (Seal)
Tina L Geisinger                              -Borrower

_Samuel Geisenger_ (signature) 1-3-11 (Seal)
Samuel Geisenger                              -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

BORROWER ACKNOWLEDGEMENT

SEAL

State of Maine
County of York

This instrument was acknowledged before me on January 3, 2011 by
Tina L Geisinger, Samuel Geisenger

My commission expires: 8/30/2012

_(signature)_
Notary Public

CATHRYN A. BISSONNETTE
NOTARY PUBLIC - MAINE
MY COMMISSION EXPIRES 08/30/2012

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with
MERS - Single-Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 8 of 10

DLJ Mortgage Capital, Inc. by Select Portfolio Servicing Inc., F/K/A Fairbanks Capital Corp., as (Seal)
Attorney-In-Fact -Lender

By: _____*Timothy P. O'Shea*_____

**Timothy P. O'Shea**
Vice President

LENDER ACKNOWLEDGEMENT

Commonwealth/State of Fl
County of Duval
The foregoing instrument was acknowledged before me this 7th January 2011 by Timothy P. O'Shea, Vice President
as attorney-in-fact on behalf of
DLJ Mortgage Capital, Inc. by Select Portfolio Servicing Inc., F/K/A Fairbanks Capital Corp., as Attorney-in-Fact

a corporation, on behalf of the said corporation.

_____S. Simmons_____

My Commission Expires:
Acting in the County of

> SHANDA SIMMONS
> MY COMMISSION # EE 009429
> EXPIRES: July 18, 2014
> Bonded Thru Notary Public Underwriters

---

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with    Form 3157 3/09 (rev. 8/09)
MERS - Single-Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®                                                     D14200 (0909)
Wolters Kluwer Financial Services ©2009                   Page 9 of 10

THIS PAGE WAS INTENTIONALLY LEFT BLANK

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with    Form 3157 3/09 (rev. 8/09)
MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®    D14200 (0909)
Wolters Kluwer Financial Services ©2009    Page 10 of 10

Funds for Escrow Items Provisions Exhibit
to Home Affordable Modification Agreement

Investor Loan #:

Loan Number:

Borrower ("I"):
Tina L Geisinger and Samuel Geisinger

Lender or Servicer ("Lender"):
DLJ Mortgage Capital, Inc.

Modification Effective Date: February 1, 2011

The terms of the Home Affordable Modification Agreement between Borrower and Lender provides that as of the Modification Effective Date the provisions contained in this **Funds for Escrow Items Provisions Exhibit** are incorporated into and intended to form a part of the Home Affordable Modification Agreement within Section 4.D.

**D. Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.

FUNDS FOR ESCROW ITEMS PROVISIONS EXHIBIT
TO HOME AFFORDABLE MODIFICATION AGREEMENT
Form 3157 3/09 (rev. 8/09)
VMP ®
Wolters Kluwer Financial Services ©2009

D14317 (0909)
Page 1 of 2

In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

FUNDS FOR ESCROW ITEMS PROVISIONS EXHIBIT
TO HOME AFFORDABLE MODIFICATION AGREEMENT
Form 3157 3/09 (rev. 8/09)
VMP ®
Wolters Kluwer Financial Services ©2009

D14317 (0909)
Page 2 of 2

## EXHIBIT A
### Legal Description of Property

TWO CERTAIN LOTS OR PARCELS OF LAND, WITH THE BUILDINGS THEREON, SITUATED IN THE TOWN OF OLD ORCHARD BEACH, COUNTY OF YORK AND STATE OF MAINE, AND BEING LOTS NUMBERED NINETY-EIGHT (98) AND NINETY-NINE (99) AS SHOWN ON A PLAN OF LAND OF GLADYS M. GOODWIN DATED NOVEMBER, 1947 AND REVISED DECEMBER 29, 1947, LIBBY &DOW, ENGINEERS, AND RECORDED IN THE YORK COUNTY REGISTRY OF DEEDS IN PLAN BOOK 13, PAGE 71. SAID LOTS ARE SITUATED ON THE SOUTHERLY SIDE OF THE OLD ORCHARD ROAD AND SACO AVENUE, BOUNDED AND DESCRIBED AS FOLLOWS:
LOT NO.98: NORTHERLY BY SAID OLD ORCHARD ROAD OR SACO AVENUE, FIFTY (50) FEET ;
EASTERLY BY LOT NUMBERED NINETY-SEVEN (97) ON PLAN ONE HUNDRED (100) FEET ;
SOUTHERLY BY LOT NUMBERED ONE HUNDRED (100) ON SAID PLAN, FIFTY (50) FEET ; AND
WESTERLY BY LOT NUMBERED NINETY-NINE (99) ON SAID PLAN, ONE HUNDRED (100) FEET.
LOT NO.99: BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF OLD ORCHARD ROAD OR SACO AVENUE AT THE NORTHWESTERLY CORNER OF THEE ABOVE DESCRIBED LOT ; THENCE IN A WESTERLY DIRECTION BY SAID SACO AVENUE A DISTANCE OF FIFTY (50) FEET TO THE EASTERLY SIDELINE OF RUNNELLS AVENUE ; THENCE IN A SOUTHERLY DIRECTION BY SAID RUNNELLS AVENUE, A DISTANCE OF ONE HUNDRED (100) FEET TO A POINT AND LOT NUMBERED ONE HUNDRED (100) AS SHOWN ON SAID PLAN ; THENCE IN AN EASTERLY DIRECTION BY SAID LOT NUMBERED ONE HUNDRED (100) A DISTANCE OF FIFTY (50) FEET TO A POINT AND LOT NUMBERED NINETY-EIGHT (98) AS SHOWN ON THE ABOVE DESCRIBED PLAN ; THENCE NORTHERLY BY SAID LOT NUMBERED NINETY-EIGHT (98) A DISTANCE OF ONE HUNDRED (100) FEET TO THE POINT OF BEGINNING.

End of Document